IRVING A. SIESS, Respondent, *v.* ARTHUR W. WALKER, INC., et al., Appellants.

First Department, November 14, 1967.

*Donald L. Kuba* of counsel (*Sylvester, Harris & Burnstein*, attorneys), for appellants.

*Nathaniel Phillips* of counsel (*Arthur Goldstein* with him on the brief), for respondent.

*Per Curiam.* The defendants appeal from an order denying their motion for summary judgment.

The individual defendant, a real estate broker, earned certain commissions as the result of having been instrumental in the consummation of certain sales of real estate. Plaintiff sues for 50% of such commissions, which he alleges he was entitled to receive pursuant to an oral contract entered into with the individual defendant. That defendant denies that such contract was ever made and asserts that, assuming it had been made, plaintiff by the terms as alleged is not entitled to a share of these commissions.

The plaintiff, who too is a real estate broker, alleges that one Seymour Rubin who, at the time, was unknown to the defendants, engaged him to attempt to find a purchaser for a

certain building owned by Rubin in Detroit, Michigan. In his efforts to find a purchaser the plaintiff enlisted the services of the defendants, the parties agreeing to share the commissions in the event the purchaser was found through the defendants' assistance. It is further alleged that in consideration of plaintiff's having disclosed Rubin's identity to the defendants, it was agreed that in the event defendants failed to procure a purchaser for the Detroit building, then the defendants would share equally with the plaintiff commissions earned by them on the "first transaction thereafter in which defendants or either of them was the real estate broker and Seymour Rubin acting individually or as agent for another or others or as associate then or thereafter with another or others, purchased realty." Plaintiff sues upon the theory that he is entitled to 50% of the commissions earned in connection with purchases by Rubin of property in September, 1965, in Denver, Colorado; Elgin, Illinois, and Joliet, Illinois. The theory of the action is that the purchase of these properties represented the first transaction after failure to sell the Detroit property.

It should be noted, as indicated above, that in accordance with plaintiff's version of the contract alleged to have been made, he would only be entitled to share in the first transaction, after the failure to obtain a purchaser for the Detroit property.

It is asserted by the defendant that there was a transaction prior to the consummation of the one on which suit is brought, i.e., that in August, 1964, Rubin purchased through the defendant, as broker, property in Adrian, Michigan. It is, therefore, defendant's contention that in the circumstances, even if the contract as pleaded were made, the plaintiff may not share in any of the commissions referred to in this complaint.

The defendants' point is well taken, for there is nothing in the record by way of denial of defendants' assertion that the Adrian purchase was the first transaction within the meaning of the contract alleged. Thus, no triable issue is raised to prevent summary judgment being granted to the defendants in this action.

Moreover, it is quite apparent from the letters written by plaintiff to defendants subsequent to the events alleged in the complaint that no agreement, such as alleged by the plaintiff, was ever made. Far from supporting plaintiff's claim, they merely indicate plaintiff's disappointment in not having been apprised of the subsequent dealings by the defendants with Rubin, and in not being allowed to participate therein. Consequently, the plaintiff does not even raise a triable issue as to the making of the alleged agreement to share commissions.

Casting doubt upon the plaintiff's version of the consideration for the defendants' alleged promise, i.e., the disclosure of the identity of Rubin to the defendants, is the affidavit of Rubin, indicating his prior acquaintance with the defendants. However, for the reasons above given, which clearly point to the propriety of granting summary judgment to the defendants, we do not consider that issue.

Accordingly, the order of November 28, 1966 should be reversed on the law, with one bill of costs and disbursements to the defendants, and defendants' motion for summary judgment granted.

Stevens, J. P., Eager, Capozzoli, Tilzer and Rabin, JJ., concur.

Order entered on November 30, 1966, unanimously reversed, on the law, with one bill of $50 costs and disbursements to the appellants, and defendants' motion for summary judgment granted, with $10 costs.